AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
04/11/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____AP_____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
4/11/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____D.C._____ DEPUTY

United States of America

v.

Hugo Cesar Garcia-Garcia,

Defendant

Case No. 5:25-mj-00199

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of April 9, 2025 in the county of Riverside in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Deportation |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Harvey Nunez, Border Patrol Agent
*Complainant's signature*

Harvey Nunez, Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 4/11/25

*Judge's signature*

City and state: Riverside, California

Hon. Shashi H. Kewalramani, U.S. Magistrate Judge
*Printed name and title*

AUSA: Matthew J. Tako (x0705)

**AFFIDAVIT**

I, Harvey Nunez, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Hugo Cesar GARCIA-Garcia ("defendant") charging him with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Deportation.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF BPA HARVEY NUNEZ

3. I am a United States Border Patrol Agent ("BPA") with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since August 6, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as

well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

### III. SUMMARY OF PROBABLE CAUSE

4. GARCIA was driving on Interstate 10 ("I-10") in Riverside County when he was stopped by USBP BPAs, who ultimately determined that GARCIA was unlawfully in the United States following a prior removal. Searches of ICE computer indices confirmed that GARCIA is a Mexican citizen who was previously removed from the U.S. and did not obtain the necessary permission to re-enter.

### IV. STATEMENT OF PROBABLE CAUSE

5. Based on my review of law enforcement reports and documents, criminal history reports, and my own training and experience of USBP activities, I am aware of the following:

**A. I-10 is Frequently Used by Alien and Drug Smugglers**

6. USBP commonly patrols in the I-10 area of operation. I-10 is frequently utilized by criminal alien and drug smugglers due to the highway's proximity to the U.S./Mexico international border fence and its western termination point being in the greater Los Angeles area. Los Angeles is a source city for narcotics and a common place for illegal aliens and narcotics to travel to after entering the United States in Western Arizona and Southern California.

7. There are several highways that run north from border areas in eastern California and western Arizona that connect to I-10. As such, it is common for individuals smuggling illicit

cargo to drive north on one of these highways and then west on I-10 towards Los Angeles. Indio Station Border Patrol has seen an increase in human and narcotic cases recently on I-10.

    **B.**    **Traffic Stop of GARCIA**

    8.    On April 9, 2024, at approximately 8:15 PM, BPAs were working in the I-10 area of operation near Indio, California. They were driving marked USBP vehicles equipped with emergency lights and sirens. BPAs Ruiz and McCall were riding together and positioned on the westside onramp near I-10 and the Frontage Road in Riverside County when a Green 2008 Toyota Tundra passed them and applied its brakes in an aggressive manner upon passing the marked unit. Based on their training and experience, BPAs Ruiz and McCall found this behavior suspicious, as USBP does not enforce speeding on I-10.

    9.    BPAs Ruiz and McCall proceeded to follow the Tundra for approximately 15 miles. At one point they drove alongside the Tundra and traveled at approximately the same speed as the truck, which was 80 miles per hour. BPAs Ruiz and McCall saw the Tundra's driver look at their marked vehicle, with visible USBP insignia on the side, and observed the Tundra abruptly slowed down to approximately 60 miles per hour. It then slowed down all the way to 50 miles per hour shortly thereafter. When the BPAs were next to the Tundra, they could see the driver's face and noticed that he had a nervous facial expression.

    10.    The Tundra also began switching lanes and pulled behind a semi-truck in an apparent attempt to allow the marked USBP car to pass. Additional semi-trucks began passing the

Tundra in the fast lane, which is typically abnormal traffic behavior on I-10.

11. Due to the Tundra's odd and erratic driving, the BPAs conducted record checks on the truck. These checks showed that the Tundra was registered in Greenfield, California, nearly 400 miles from Indio. While the truck did not have any recorded crossings at a U.S. Port of Entry or Immigration Checkpoint, it is common for BPAs to see vehicles on an extended route of travel between California and Arizona to avoid operation USBP checkpoints.

12. At this point, BPAs Ruiz and McCall activated their lights and sirens on their marked car to conduct a traffic stop. The Tundra pulled over on the westbound lanes of I-10, near the Golf Center Parkway exit in Indio, California. Once the Tundra had safely stopped, BPAs Ruiz and McCall got out of their car and BPA Ruiz approached the driver's side window of the Tundra.

13. BPA Ruiz asked the driver, later identified as GARCIA, for a form of identification. GARCIA provided a California driver license. GARCIA was then asked regarding his immigration status, which GARCIA refused to answer and stated that he was going to stay silent. BPA Ruiz informed GARCIA that he is not "playing games" and placed him in handcuffs for safety. GARCIA was then placed in the back of the marked USBP car.

4

### C. GARCIA Was Previously Deported and Has No Legal Status in the U.S.

14. During the traffic stop, BPAs Ruiz and McCall conducted a record check on GARCIA, which showed that he was previously removed from the United States on March 2, 2016.

15. At this time, the BPAs determined that GARCIA was illegally present in the United States after being previously removed, placed him under arrest, and transported him to the Indio Border Patrol Station for further processing.

16. At the Indio Border Patrol Station, GARCIA's fingerprints, biographical information, and photograph were entered into the e3/IDENT/IAFIS systems and revealed GARCIA's prior immigration history. These checks showed that GARCIA was last physically removed by a Designated Official from the United States to Mexico on March 2, 2016, through Calexico, California.

17. On or about April 11, 2025, I reviewed the printouts of ICE computer indices on GARCIA. Records checks revealed that defendant is a citizen of Mexico. Based on my training and experience, I know that the ICE computer indices track and document each time an alien is deported or excluded from the United States by ICE, was deported or excluded by the former INS, or is granted permission to enter or re-enter the United States. The ICE computer indices confirmed that defendant had been removed, deported, and/or excluded on the following date: March 2, 2016, through Calexico, California. The ICE computer indices further indicated that defendant had not applied for, or

obtained from the Attorney General or the Secretary of Homeland Security, permission to re-enter the United States.

## V. CONCLUSION

18.  For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Deportation.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 11th day of
April 2025.

_____
HONORABLE SHASHI H. KEWALRAMANI
UNITED STATES MAGISTRATE JUDGE